```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION
```

| | |
|---|---|
| DOMINIC MCDONALD § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL NO. H-04-1845 |
| § | |
| UNITED STATES OF AMERICA and § | |
| UNITED STATES COAST GUARD § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant United States' Motion to Dismiss (Docket Entry No. 19). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

### I.  Case Background

**A.  Factual History**

Dominic McDonald ("Plaintiff") seeks review of the decision of the Vice Commandant of the Coast Guard ("Vice Commandant") to suspend Plaintiff's Third Mate's Unlimited Tonnage Upon Ocean's License ("License") and Merchant Mariner's Document ("Document").[2] Plaintiff, on July 31, 2000, voluntarily submitted a urine sample for a drug test in order to obtain a "drug free" certificate from

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 18.

[2] Plaintiff's Original Complaint, Docket Entry No. 1 ("Original Complaint"), at 1-2.

the Master, Mates, and Pilots Union ("Union").[3] Plaintiff's urine sample was tested, and the test determined that Plaintiff's urine creatinine concentration was 3 mg/dL, below the then-regulatory minimum of 5 mg/dL, with a specific gravity[4] of 1.001.[5] Under the regulations in effect at the time, Plaintiff's urine had neither the appropriate creatinine concentration nor specific gravity to constitute human urine.[6] Plaintiff's alleged submission of non-human urine, per United States Coast Guard ("Coast Guard") regulations, constituted a substituted specimen.[7] Plaintiff was charged with refusal to submit to a urinalysis test, and, as a result, the Coast Guard Marine Safety Unit, Galveston, Texas, sought revocation of Plaintiff's License and Document.[8]

## B. Procedural History

Coast Guard Administrative Law Judge ("ALJ") Thomas McElligott held hearings in Houston, Texas, on May 16-18, 2001, June 7, 2001, and July 12, 2001.[9] The ALJ concluded that Plaintiff committed

---

[3]   Original Complaint at 2; Defendant's Motion to Dismiss and Memorandum of Law in Support, Docket Entry No. 19 ("Motion to Dismiss"), at 2.

[4]   Specific gravity is the ratio of the density of Plaintiff's urine to the density of another substance accepted as standard (usually water). Thus, Plaintiff's urine, with a specific gravity of 1.001, is 1.001 times as dense as water. See MOSBY'S POCKET DICTIONARY OF MEDICINE, NURSING, & ALLIED HEALTH 832 (1st ed. 1990).

[5]   Original Complaint at 2; Motion to Dismiss at 2.

[6]   Original Complaint at 2; Motion to Dismiss at 3.

[7]   Original Complaint at 2; Motion to Dismiss at 3.

[8]   Motion to Dismiss at 3.

[9]   Id.

misconduct by submitting a substituted urine sample.[10] The ALJ penalized Plaintiff by suspending his License and Document for twelve months.[11] On January 4, 2002, Plaintiff appealed the ALJ's decision to the Vice Commandant.[12] By decision of the Vice Commandant, the Commandant of the Coast Guard affirmed the ALJ's decision.[13] Plaintiff, pursuant to the Administrative Procedures Act ("APA"), seeks judicial review of the Vice Commandant's decision in this court on May 4, 2004.[14]

On October 14, 2004, Defendant United States of America ("Defendant") moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## II. Legal Standards

The court may dismiss an action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the party asserting jurisdiction bears the burden of proof. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)(citing McDaniel v. United States, 899 F. Supp 305, 307 (E.D. Tex. 1995)). The court,

---

[10] Original Complaint at 2; Motion to Dismiss at 3.

[11] Original Complaint at 2; Motion to Dismiss at 3.

[12] Motion to Dismiss at 3; Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 21 ("Plaintiff's Response"), at 2.

[13] Original Complaint at 3; Motion to Dismiss at 3.

[14] Original Complaint at 1; Motion to Dismiss at 3.

in determining whether it is properly vested with subject matter jurisdiction, is "'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).  A Rule 12(b)(1) motion "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Ramming, 281 F.3d at 161 (citing Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(1) motions may be filed in conjunction with other Rule 12 motions, but the court should decide the Rule 12(b)(1) motion before addressing any attack on the merits. Ramming, 281 F.3d at 161 (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)(per curiam)).  A dismissal of a complaint pursuant to Rule 12(b)(1) "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." Id.

The court may also dismiss a complaint because it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Kane Enters. v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003); Rolf v. City of San Antonio, 77 F.3d 823, 827 (5th Cir. 1996).  Dismissal

of a claim is improper "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the allegations which would entitle the plaintiff to relief.'" Kane Enters., 322 F.3d at 374 (quoting Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). The court "must examine the complaint to determine whether the allegations provide relief on any possible theory." Ramming, 281 F.3d at 162 (citing Cinel v. Connick, 15 F.3d 1338, 1341 (5th Cir. 1994)).

### III.  Analysis

Defendant first seeks dismissal of Plaintiff's complaint pursuant to Rule 12(b)(1). Defendant argues that this court lacks subject matter jurisdiction for two reasons:  (1) the Vice Commandant's decision is not a "final agency action," and (2) Plaintiff did not exhaust his administrative remedies. Defendant uses the same reasoning for both arguments; i.e., Defendant argues that Plaintiff must appeal to the NTSB before judicial review is available. Defendant also argues that this court should dismiss the complaint under Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.

**A.   Subject Matter Jurisdiction**

Under the APA, an individual is entitled to judicial review of agency decisions if he "suffer[s] a legal wrong because of agency actions or [is] aggrieved by agency action within the meaning of a relevant statute . . . ."  5 U.S.C. § 702.  "When . . . the

relevant administrative agency statutory provisions do not directly provide for judicial review, the APA authorizes judicial review only of 'final agency action.'" Am. Airlines, Inc. v. Herman, 176 F.3d 283, 287 (5th Cir. 1999); see also  5 U.S.C. § 704.  The court lacks subject matter jurisdiction if there is no "final agency action." Am. Airlines, 176 F.3d at 287; Veldhoen v. United States Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994).  When an aggrieved party has exhausted all mandatory administrative remedies, the agency action is "final" for the purposes of this Section 704 and therefore "subject to judicial review" under the first sentence because Plaintiff has exhausted all required administrative remedies.  Darby v. Cisneros, 509 U.S. 137, 146 (1993); see also 5 U.S.C. § 704.

Defendant argues that judicial review is unavailable to Plaintiff because the Vice Commandant's decision was not a "final agency action," as that term of art is properly understood.  Defendant instead characterizes the Vice Commandant's decision as an "intermediate agency action" because Plaintiff had authority to appeal the decision to the National Transportation and Safety Board ("NTSB").  See 49 C.F.R. § 825.5.  Defendant points out that the applicable statutory authority provides that the NTSB "shall" review on appeal the decisions of the Coast Guard that suspend a license or document.  See 49 U.S.C. § 1133(3).  Defendant argues, based on the above cited provisions, that Plaintiff's next

6

appropriate level of appeal was the NTSB and that only a decision by the NTSB would be a reviewable "final agency action." Thus, Defendant contends that this court lacks subject matter jurisdiction because the Vice Commandant's decision is not ripe for review.

The court finds that the Vice Commandant's decision is a "final agency action." In Exxon Chemicals America v. Chao, 298 F.3d 464 (5th Cir. 2002), the Fifth Circuit adopted a test set out by the Supreme Court to determine when an agency action is "final" under the APA. Id. (citing Bennett v. Spear, 520 U.S. 154 (1997)). Under the so-called "Bennett test," for an agency action to be final, the action must satisfy two conditions. "First, 'the action must mark the "consummation" of the agency's decision-making process,'" and "'it must not be of a merely tentative or interlocutory nature.'" Id. at 466-67 (quoting Am. Airlines, 176 F.3d at 287 (quoting Bennett, 520 U.S. at 177-78)). "Second, the action must be one 'by which rights or obligations have been determined, or from which legal consequences will flow.'" Id. at 467 (quoting Sierra Club v. Peterson, 228 F.3d 559, 565 (5th Cir. 2000)).

   1.   **First Prong of the Bennett Test**

The Vice Commandant's decision marks the consummation of the Coast Guard's decision-making process because there are no other avenues of appeal Plaintiff may pursue within the Coast Guard

itself.

Here, the Vice Commandant affirmed the ALJ decision on the merits of Plaintiff's case. The Vice Commandant's decision is neither tentative nor interlocutory in nature, nor is it merely an intermediate step in the Coast Guard's decision-making process. In fact, the Coast Guard's own regulations explicitly provide that the Vice Commandant's decision is the agency's final decision: "The Decision of the Commandant on Review,[15] shall be the final agency action in the absence of a remand." 46 C.F.R. § 5.805(c). The availability of a permissive avenue for appeals outside the Coast Guard (to the NTSB) does not alter the fact that, per Coast Guard regulations, the Vice Commandant's decision marks the conclusion of the Coast Guard's decision-making process.[16] Therefore, the Vice Commandant's decision satisfies the first prong of the Bennett test.

## 2. Second Prong of the Bennett Test

The second prong of the test provides that the action must have either determined rights or obligations, or had legal consequences flow therefrom. See Exxon, 298 F.3d at 467. The Vice Commandant's decision satisfies this prong because the decision is

---

[15] Per Coast Guard regulations, the Commandant of the Coast Guard delegates to the Vice Commandant the authority to take the final agency action on each appeal from a decision of an ALJ. 33 C.F.R. § 1.01-40.

[16] The Coast Guard could have avoided the finality of the Vice Commandant's decision, found in 46 C.F.R. Section 5.805(c), if it adopted a rule requiring appeal to the NTSB before judicial review is available and provided that the Vice Commandant's decision would be "inoperative" pending appeal to the NTSB. See Darby, 509 U.S. at 152.

an action by which Plaintiff's rights have been determined.

In reaching this decision, the court finds instructive the Fifth Circuit's decision in Exxon, in which the court analyzed the second prong of the test to determine whether an action by the Administrative Review Board ("ARB") of the Department of Labor ("DOL") was a "final agency action." In that case, Edwin Melendez ("Melendez") filed a complaint with the DOL after Exxon terminated his employment. Exxon, 298 F.3d at 465. The DOL denied Melendez relief, and Melendez thereafter requested a formal hearing before an ALJ. Id. Initially, the ALJ ruled that Melendez's complaint letters were not timely filed and dismissed his claims. Id. at 465-66. On appeal, the Secretary of Labor[17] ("Secretary") disagreed with the conclusion that Melendez did not timely file his complaint. Id. at 466. The Secretary remanded the matter back to the ALJ for reconsideration of the timeliness issue and further fact-finding. Id. On remand, the ALJ found that Melendez timely filed his complaint but concluded that Melendez failed to establish his claims. Id. On appeal, the ARB vacated the ALJ's decision and remanded the case back for further consideration. Id. Exxon appealed that remand order. Id.

The Exxon court determined that the ARB's remand order was not

---

[17] Melendez's first appeal occurred prior to the creation of the ARB. Thus, his appeal was heard by the Secretary. Melendez's second appeal occurred after the creation of the ARB, and, thus, his second appeal was heard by the newly created ARB. See Exxon, 298 F.3d at 466.

9

a "final agency action" because it did not make a determination on Exxon's rights. Id. at 467. In particular, the court found that "the ARB's remand order does not have a substantial effect on Exxon's rights such that they cannot be altered by subsequent action by the ARB." Id. Pointing out that "because the ARB expressly declined to make any factual findings in its remand order, there are no finalized factual findings for us to review," the court held that the ARB's remand order was not a "final agency action" under the APA. Id.

In contrast to the ARB in Exxon, the Vice Commandant reviewed the ALJ's factual findings and made a determination on Plaintiff's rights to hold his License and Document. The ALJ determined, and the Vice Commandant affirmed, that Plaintiff's right to hold a License and Document should be suspended for a twelve-month period.[18] This court, unlike the district court in Exxon, received a final determination from the Vice Commandant to review.[19] The Vice Commandant's decision satisfies the second prong of the Bennett test, and, therefore, this court finds that the Vice Commandant's decision is a "final agency action".

Because the Vice Commandant's decision is a "final agency action" for purposes of the APA, Plaintiff may seek judicial review of the decision without first appealing to the NTSB. See Darby,

---

[18] Original Complaint at 2; Motion to Dismiss at 3; Plaintiff's Response, App. 1 at 12.

[19] Original Complaint at App. 1.

10

509 U.S. at 138; see also United States v. Menendez, 48 F.3d 1401, 1410-12 (5th Cir. 1995)(applying the rationale from Darby). Thus, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." Darby, 509 U.S. at 154 (emphasis in original).

Here, an appeal to the NTSB is not a prerequisite to judicial review because the pertinent statutory and regulatory provisions do not mandate appeal to the NTSB before judicial review is available.[20] Neither Coast Guard nor NTSB regulations explicitly require appeal to the NTSB before judicial review. Rather, these regulations, couched in permissive language, provide that Plaintiff "may" appeal the decision of the Vice Commandant to the NTSB. See 49 C.F.R. § 825.5 (providing that a party "may" appeal a decision of the Commandant to the NTSB).

Moreover, applicable statutory law does not expressly require Plaintiff to appeal to the NTSB before judicial review is available. Current law vests the NTSB with the power to review the Vice Commandant's decision, it does not affirmatively mandate that appeal to the NTSB must be taken before judicial review is available. See 49 U.S.C. § 1133(3). This court is "not free to impose an exhaustion requirement as a rule of judicial

---

[20] The permissive nature of the NTSB appeals process helps explain the Coast Guard's failure to notify Plaintiff of his NTSB appellate rights.

administration where the agency action has already become 'final' under § [704]." Id.

**B.   Failure to State a Claim**

Defendant also moves for dismissal for failure to state a claim upon which relief can be granted.  Defendant has not made any substantive arguments in support thereof.  Nevertheless, the court finds that Plaintiff's complaint states a claim for which relief can be granted because it contains factual allegations that, if proved true, could entitle Plaintiff to relief.  Therefore, Defendant's argument is meritless.

## IV.   Conclusion

Based on the foregoing, the court **DENIES** Defendant's Motion to Dismiss.

Cross motions for summary judgment on the merits of this action must be filed by August 1, 2005.  Responsive briefs are due ten days hereafter.

**SIGNED** in Houston, Texas, this 30th day of June, 2005.

Nancy K. Johnson
United States Magistrate Judge